**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LINDA COOK,** *et al.*, : | |
| : | **Case No. 2:18-CV-282** |
| **Plaintiffs,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | **Magistrate Judge Deavers** |
| **ERIE INSURANCE COMPANY,** : | |
| : | |
| **Defendant.** : | |

## OPINION & ORDER

This matter is before the Court on the supplementary briefing ordered by the Court in its May 5, 2020 Order granting in part Defendant's Motion for Summary Judgment. (ECF No. 76). In that Order, this Court requested that the parties file supplemental briefing addressing the issue of the admissibility of the report by Plaintiffs' expert witness, Mr. Stuart Stuart Setcavage. For the reasons forth below, this Court determines that this report is admissible in part and **DENIES in part** Defendant's Motion for Summary Judgment (ECF No. 66) on Plaintiff's bad faith claim.

### I. BACKGROUND

This Court set out the factual history of this case in its May 5, 2020 Order and incorporates those facts as if fully set forth herein. In the May 5, 2020 Order granting in part Defendant's Motion for Summary Judgment, this Court granted summary judgment on Plaintiff's contract claim and on the breach of the duty of good faith (also "bad faith") claims premised on: (1) Erie placing its interests above that of its insured by requesting documents pursuant to a cooperation clause; (2) Erie's failure to investigate the claim; and (3) Erie's counterclaim filed against Plaintiffs for overpayment. (ECF No. 76). This Court held in abeyance Defendant's motion for summary judgment as to the bad faith claim premised on Erie's allegedly superfluous

1

requests for documents as a means of delaying payment because the only evidence that Plaintiffs had presented in support of that claim was Mr. Setcavage's expert report. *Id.* at 18. This Court determined that if admissible, Mr. Setcavage's expert report was sufficient evidence to raise a genuine issue of material fact on that particular bad faith claim. In its reply, Defendant argued that this report was inadmissible since it was an *ipse dixit* opinion. Because Plaintiffs did not have an opportunity to address the admissibility of their expert's report, this Court ordered both parties fully to brief the issue. Both parties have submitted supplemental briefing addressing the admissibility of Mr. Setcavage's expert report. (ECF No. 79, No. 80).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Evidence 702, an expert's opinion is admissible, at the discretion of the trial court, if: (1) the expert is qualified as such by knowledge, skill, experience, training, or education; (2) the testimony is relevant, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony is reliable, meaning it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case. *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 528–29 (6th Cir.2008).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court held that while the evaluation of expert testimony is generally left to juries, district courts must serve in a "gatekeeping" capacity, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597–98, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Daubert* set forth a nonexclusive check-list for assessing the reliability of a scientific expert's testimony: (1) whether the theory or methodology has been or can be tested; (2) whether it has been subjected to peer review; (3) whether it has a known or potential rate of error; and (4)

whether it has been generally accepted in the scientific community. *Id.* at 593–94, 113 S.Ct. 2786.

In *Kumho Tire Co. v. Carmichael,* the Supreme Court clarified that the reliability inquiry *Daubert* outlined covers not just scientific testimony, but also expert testimony based on—in the language of Rule 702—"technical" and "other specialized knowledge." 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In *Kumho* the Supreme Court also recognized, however, that the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167; *see Gross v. Comm'r,* 272 F.3d 333, 339 (6th Cir.2001) (explaining that the *Daubert* factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of reliability of expert testimony").

District courts evaluating the reliability of expert testimony based on the expert's personal knowledge or experience, may forgo the *Daubert* factors, and instead focus on whether the expert's testimony "explain[s] how that experience leads to the conclusion reached ... and how that experience is reliably applied to the facts." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). The district court is required to do more than simply take "the expert's word for it" as part of its gatekeeping function. *Id.*

The Supreme Court and the Sixth Circuit have observed that the admissibility of expert testimony is a flexible inquiry where "non-scientific expert testimony is involved" since the "law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007); *accord Daubert,* 509 U.S. at 594. The burden on a party proffering expert testimony is to "show by a preponderance of proof that the expert whose

3

testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Sigler v. Am. Honda Motor Co.,* 532 F.3d 469, 478 (6th Cir.2008) (citing *Pride v. BIC \*752 Corp.,* 218 F.3d 566, 578 (6th Cir.2000)) (internal quotation marks omitted). A district court deciding whether an expert's opinion is reliable "is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Stuckey v. Online Res. Corp.,* No. 2:08–CV–1188, 2012 WL 1808943, at \*4 (S.D. Ohio May 17, 2012) (Marbley, J.) (citing I*n re Scrap Metal,* 527 F.3d at 529–30).

### III. ANALYSIS

The Federal Rules of Evidence permit an expert witness to testify if: (1) the expert is qualified to give that testimony; (2) the testimony is relevant; and (3) the testimony is reliable and the expert has applied scientific principles or his experience to the facts of the case. Fed. R. Ev. 702; *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 528–29 (6th Cir.2008). Defendant does not contest that Mr. Setcavage is qualified by his knowledge or his experience in the insurance industry, but does argue that his testimony is irrelevant and unreliable.

#### A. Relevance of Setcavage's opinion

Defendant argues that Mr. Setcavage's opinion should be excluded as irrelevant because: (1) the testimony is not material to any material fact at issue; (2) the testimony is based on inadmissible legal standards; and (3) the testimony offers legal opinions that invade the province of the court. (ECF No. 80 at 8-21).

##### 1. Relevance to Material Facts

Defendant first argues that Mr. Setcavage's opinion is irrelevant to any material issue because this court has already determined that Erie had a legal right to ask for the documents that

4

it requested. (ECF No. 80 at 9-10). The mere fact that Defendant has a legal right to do something does not mean that it did not act in bad faith in exercising that right. *See Wiseman v. Universal Underwriters Ins. Co.*, 412 F. Supp. 2d 801, 804 (S.D. Ohio 2005) (noting that the "breach of the duty to act in good faith will give rise to a cause of action in tort against the insurer irrespective of any liability arising from breach of contract."). In its May 5, 2020 Order, this Court determined that an insurer's request for documents to protect its own interests (including its right to seek subrogation or verify claims) was not in itself evidence of bad faith. This Court also determined that an insurer's unnecessary requests for documentation, where those requests are made solely to delay payment of a claim, and not to verify a claim or protect any valid interest, can support a claim for bad faith. The issue here is whether the only evidence that Plaintiffs have presented to support their bad faith claim premised on an unjustifiable delay—the testimony of Mr. Setcavage—is admissible.

Defendant dedicates pages of its supplemental briefing to rehashing the evidence that exists in support of its defense that it was reasonably justified in delaying payment until it obtained information about the workers compensation lien, etc. But the sufficiency of Defendant's evidence is not at issue. This Court has already determined that a jury could reasonably rely on that evidence to determine whether Erie had reasonable justification for requesting the documents and information that it did from Plaintiffs. (ECF No. 76 at 16). The question, however, is the sufficiency of Plaintiffs' evidence to support its proposition that Erie did not need any of the information or the documents it requested and that Erie essentially dragged its feet in collecting any necessary documentation and requested documents in order to delay payment of the claim as part of a profit strategy. Mr. Setcavage's expert testimony is thus

relevant to a material fact in issue since it provides an opinion as to whether Erie actually needed the documents and information it requested.

### 2. Reliance on Inadmissible Ohio Regulations

Defendant argues that Mr. Setcavage's expert testimony is also inadmissible on the basis of relevance because it relies on Ohio insurance regulations that are inadmissible in bad faith claims. (ECF No. 80 at 12). Defendant points out that Mr. Setcavage's testimony relies on Ohio Administrative Code § 3901-1-07, which the Ohio Department of Insurance uses to regulate unfair trade practices by insurance companies but which do not create private rights of action and have been deemed inadmissible as the legal standard for bad faith claims by Ohio courts. *See e.g., Furr v. State Farm Mut. Auto. Ins. Co.,* 128 Ohio App. 3d 607, 617 (1998). Defendants are correct that these administrative regulations do not create a private right of action and are not independently admissible. *See id.* The Federal Rules of Evidence, however, permit experts to rely on inadmissible evidence if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Ev. 703. Furthermore, while the administrative rules do not create a private right of action and cannot be used as the standard for bad faith claims, an expert's reliance on those factors as part of his testimony regarding the insurer's standard of care is not error so long as a jury is "not instructed that a violation would *per se* amount to a breach of good faith." *Furr,* 128 Ohio App. 3d at 617. Accordingly, Mr. Setcavage's expert testimony is not inadmissible solely because it relies in part on the Ohio administrative regulations for insurance companies.

### 3. Legal Opinions

Defendant also argues that Mr. Setcavage's testimony is irrelevant since it seeks to provide a legal opinion that invades the province of the court. (ECF No. 80 at 11-12). While

expert testimony is permitted to embrace an "ultimate issue," an expert is not permitted to testify regarding "legal conclusions" since the testimony "may convey unexpressed, and perhaps erroneous, legal standards to the jury" *U.S. ex rel. Martin v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2014 WL 4816006, at *3 (E.D. Tenn. Sept. 29, 2014) (internal quotation marks omitted) (citing *Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir.1989) and *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir.1985)).

Furthermore, the Sixth Circuit has clarified that although expert opinion may embrace ultimate issues to be decided by the jury, the expert is not permitted to draw a legal conclusion and is only permitted to state an opinion "that suggests the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (noting that a court would not be permitted to "allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important.").

Here, Mr. Setcavage's opinion does include some references to legal standards and does make legal conclusions. For example, Mr. Setcavage opines:

> Furthermore, there is nothing in the policy that puts such prerequisites on payment of promised policy benefits. (ECF No. 72-16 at 13)
> …
> As previously discussed, none of these things are needed to pay UM benefits, **nor does the policy language state that these items are prerequisites to receiving the promised contractual benefits as outlined in the policy**. In fact, from my review of this matter, the plaintiffs, Linda Cook, Hubert Cook, Adam Cook and Brianna Willis have fully complied with the policy terms and conditions. (ECF No. 72-16 at 17)
> …
> In this regard, there is no reasonable justification to delay payment or refuse to pay either claim unless the insured provides a death certificate. (ECF No. 72-16 at 17)
> …

> The rights and duties of the insured are specifically outlined in the policy. There is no duty for the insured to investigate or evaluate his or her own claim. The insured's contractual rights and duties are not altered simply because they chose to be represented by legal counsel. The insurance company's duty to investigate in this regard is not delegable. (ECF No. 72-16 at 24).

This testimony is impermissible since it makes a legal conclusion as to the rights and obligations under the insurance contract and on the ultimate issue of liability; whether Erie had reasonable justification or whether it acted in bad faith by delaying payment. Defendant asks us to strike the entirety of Mr. Setcavage's report. Courts in the Sixth Circuit, however, use a "a scalpel, not a butcher['s] knife" when deciding admissibility issues. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (internal citations omitted) (determining that district court abused its discretion by striking an "entire affidavit, rather than striking only the *inadmissible* portions thereof.").

To the extent that Mr. Setcavage's testimony offers an opinion on the ultimate issue of liability or suggests that it is improper for an insurer to seek to protect its own interests (to subrogation, etc) by requesting information pursuant to a cooperation clause, that testimony is irrelevant since this Court has determined that an insurer's requests for documentation to protect its own interests is not *per se* evidence of bad faith. To the extent, however, that Mr. Setcavage's testimony provides an opinion based on his experience that Erie's requests for documentation were intended to delay payment to engage in a "float" profit strategy and not to advance any legitimate interest, that testimony is relevant since it is based on his experience as an insurance adjuster.

### B. Reliability of Mr. Setcavage's Testimony

Defendant also argues that Mr. Setcavage's testimony is inadmissible since it is unreliable and is "ipse dixit" based on "nothing more than the expert's own belief." (ECF No. 80 at 21). Plaintiffs argue that Mr. Setcavage has adequately explained how his experience as an

8

insurance adjuster supports his application of his training and industry standards to the facts of this case. (ECF No. 79 at 16).

Erie first argues that Mr. Setcavage's opinion is unreliable because it is based on Ohio administrative regulations that are themselves inadmissible as evidence of the standard for bad faith claims. (ECF No. 80 at 18). As this court has determined above, however, experts are permitted to rely on standards that other "experts in the particular field would reasonably rely on" even if those standards are ultimately inadmissible. Additionally, Mr. Setcavage clearly states that his testimony is based primarily on his "extensive experience, specialized education and training and concentrated exposure and background in handling and reviewing automobile claims over the past three decades." (ECF No. 72-16 at 4).

Erie also takes issue with several of Mr. Setcavage's opinions since they are based on nothing more than his "subjective belief, as opposed to a conclusion based on objective standard or methodology." (ECF No. 80 at 24). District courts evaluating the reliability of non-scientific expert testimony do not have to focus on whether the expert employed an objective standard or methodology and can instead "focus on the reliability of the expert's personal knowledge or experience." *Luna v. Bell*, No. 3:11-CV-00093, 2013 WL 12316066, at *5 (M.D. Tenn. Aug. 1, 2013); *see also First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334 (6th Cir. 2001) (internal quotation marks omitted) (noting that Daubert standards are "only of limited help in assessing technical or experiential expertise"). The relevant inquiry is whether the expert has applied his experience to the facts of the case. *Id*. The Sixth Circuit has acknowledged that in certain fields, "experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005). An expert is required, however, to "explain how that experience leads to the conclusion reached ... and how that experience is reliably applied to the facts." *Id.* at 432. Courts have considerable leeway in

9

determining whether evidence is reliable. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) ("[W]here one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line.").

In his deposition and his report, Mr. Setcavage explains that his report is based on his 24 years of experience supervising and auditing claims for State Farm Mutual Automobile Insurance company as well as a legal consultant for mediated insurance coverage disputes. (ECF No. 79 at 16-17; No. 72-16 at 4-6, 26). Many of the opinions that Mr. Setcavage offers do explain how his experience is applied to the facts of this case. For example, Mr. Setcavage opines:

> Additionally, as part of every auto claim investigation, insurers investigate the existence of other insurance as part of its initial handling. This was not done in this case for 239 days. This falls far below acceptable industry standards.
> Similarly, if Erie needed information about workers' compensation insurance relative to The Shelly Company, it needed to investigate to identify the carrier and to promptly contact it to obtain whatever information it deemed necessary. Cr Rocco admitted that he did nothing to get documentation from workers' comp to determine if the was a lien. He only asked the insured to do it for him
> ….
> Insurers sometimes request a copy of a death certificate to document the claim file. However, there is nothing in the policy or in any other authority that I am aware of that requires a death certificate as the only form of reasonable proof of death. In this case, even the most minimal of efforts such as a simple Google search would provide the adjuster with reasonable evidence of death. Further, the police report provided proof so there was no question that Mr. Cook was killed as a result of this loss.
> …
> Insurance companies make money in two ways; (1) by paying less in claims and expenses than collected in premiums, and (2) float. When an insurance company holds money paid to it in the form of premiums, it makes money by investing these premium dollars. This is called "float." If not for float, many insurers would not be as profitable, or in some years profitable at all based upon underwriting profit alone. In essence, Erie is actually being paid to take other people's money. It makes money on other people's money until such time it has to pay a claim. Therefore, there is an inherent financial incentive for insurers to hold money for as long as possible.
> . . . For the reasons outlined herein, it is my professional opinion that Erie's claim handling demonstrated a reckless disregard for the rights and interest of its insureds.

10

(ECF No. 72-16 at 24-26). *See Luna v. Bell*, No. 3:11-CV-00093, 2013 WL 12316066, at \*6 (M.D. Tenn. Aug. 1, 2013) (determining that expert's report was reliable where expert had reviewed all case evidence and explained that he had applied his years of experience to the facts of the case to come to his conclusions).

In some instances, however, Mr. Setcavage's report tends to offer legal conclusions and make conclusory statements that are unsupported with specific examples of how his experience or knowledge of industry standards applies to the facts of this case. For example, Mr. Setcavage states:

> Furthermore, there is nothing in the policy that puts such prerequisites on payment of promised policy benefits. (ECF No. 72-16 at 13).
> ….
> As previously discussed, none of these things are needed to pay UM benefits, **nor does the policy language state that these items are prerequisites to receiving the promised contractual benefits as outlined in the policy**. In fact, from my review of this matter, the plaintiffs, Linda Cook, Hubert Cook, Adam Cook and Brianna Willis have fully complied with the policy terms and conditions. (ECF No. 72-16 at 17)
> ….
> In this regard, there is no reasonable justification to delay payment or refuse to pay either claim unless the insured provides a death certificate. (ECF No. 72-16 at 17)
> ….
> The rights and duties of the insured are specifically outlined in the policy. There is no duty for the insured to investigate or evaluate his or her own claim. The insured's contractual rights and duties are not altered simply because they chose to be represented by legal counsel. The insurance company's duty to investigate in this regard is not delegable. (ECF No. 72-16 at 24)
> ….
> Thus, there is no reasonable justification to withhold payment of promised policy benefits by requiring the insured to obtain and provide a death certificate. (ECF No. 72-16 at 25).
> ….
> Erie's contention that the delay in paying this claim was caused by the insured is absurd because the insured has no duty to do Erie's investigation for it, the insured cannot assume that its insured is doing nothing to proactively investigate the claim, and none of the prerequisites Erie demanded were needed to pay the claim. *Id.*

This type of testimony is impermissible since it does not explain how Mr. Setcavage's experiences would lead to such a result and expresses a legal conclusion that is for the jury to determine. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (determining

11

that expert's report was insufficient to create genuine issue of fact where expert did not provide any rationale and offered only a conclusion with no "qualitative analysis" of how his past experiences "were similar to the present case").

Nonetheless, the fact that Mr. Setcavage's report includes some of these opinions does not mean that his report as a whole is unreliable or should be stricken. *See Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637, 663 (S.D. Ohio 2011), *aff'd in part, appeal dismissed in part*, 700 F.3d 779 (6th Cir. 2012) (noting that "[t]o the extent that the Plaintiffs' expert witnesses state opinions that constitute legal conclusions, the Court will not rely upon those opinions. However, the fact that portions of [expert's] affidavit constitute inadmissible legal conclusions does not prevent this Court from considering other aspects of [expert's] affidavit and report."). As indicated above, courts determining admissibility issues are required to strike only those portions of the testimony that are inadmissible, and not the entirety of the testimony. *See Upshaw*, 576 F.3d at 593. Furthermore, where the reliability of evidence is in dispute, it is more appropriate for a judge to admit the evidence than to keep it from the fact-finder because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. Additionally, if the evidence is deemed admissible by a court, but it is ultimately found "insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment." *Id.; see* Fed.R.Civ.P. 50.

Accordingly, to the extent that Mr. Setcavage's report contains unsupported claims or legal conclusions, this Court will not consider those opinions at this stage. Mr. Setcavage's report, however, does include some opinions that are admissible, and those opinions are

sufficient evidence to create an issue of fact on the bad faith claim since they indicate that based on Mr. Setcavage's experience, Erie's requests for documents and information were only intended to delay payment as part of a profit-strategy based on float and were not intended to further any legitimate interest like protecting a right to seek subrogation, etc. Accordingly, this Court determines that there is sufficient evidence from which a jury could determine that Erie acted in bad faith by requesting additional documents and information solely to delay payment of the claim, and not for any legitimate purpose. For these reasons, this Court **DENIES in part** Erie's Motion for Summary Judgment on the bad faith claim.

### III. CONCLUSION

For the reasons stated above, this Court determines that Mr. Setcavage's expert testimony is admissible in part. This Court **DENIES in part** Defendant's Motion for Summary Judgment as to Plaintiffs' breach of the implied duty of good faith and fair dealing. (ECF No. 66).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**Dated: August 11, 2020**