IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LINDA COOK, *et al.*, | : |
| | : Case No. 2:18-cv-00282 |
| Plaintiffs, | : |
| | : Chief Judge Algenon L. Marbley |
| v. | : |
| | : Magistrate Judge Deavers |
| ERIE INSURANCE COMPANY, | : |
| | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before the Court on Plaintiffs' Motion for New Trial. (ECF No. 122). For the following reasons, Plaintiffs' Motion is **DENIED**. This case shall remain **CLOSED**.

### I. BACKGROUND

The facts of this case are detailed in this Court's April 26, 2018, Opinion & Order on Plaintiffs' Motion to Dismiss, (ECF No. 41), as well as in its September 6, 2019, Opinion & Order on Defendant's Motion for Summary Judgment. (ECF Nos. 76, 81). In the interest of judicial economy, this Court will limit its discussion to the facts pertinent to Plaintiffs' Motion for New Trial. This case went to trial on May 24, 2021. The jury returned a verdict on May 28, 2021, finding in favor of Defendant on Plaintiffs' claim for bad faith delay. (ECF No. 117). Pursuant to that verdict, this Court entered judgment in favor of Defendant on June 9, 2021. (ECF No. 118).

Shortly thereafter, on June 29, 2021, Plaintiffs filed the instant Motion for New Trial. (*See* ECF Nos. 122, 123). Plaintiffs argue that Defendant's expert witnesses testified to impermissible legal conclusions, and the improper admission of this testimony constitutes prejudicial error necessitating a new trial, pursuant to Fed. R. Civ. P. 59(a)(1). (*See generally* ECF No. 123).

1

Defendant responded to Plaintiffs' Motion on August 20, 2021, (ECF No. 131), and Plaintiffs timely replied, (ECF No. 134), making the Motion ripe for review.

## II.     LEGAL STANDARD

### A. New Trial Motion

Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: after a jury trial, for any reason for which a new trial has been granted in an action at law in federal court." Determining whether a new trial is appropriate is within the discretion of the trial court under Rule 59. *See Acuity Mut. Ins. Co. v. Frye*, 471 Fed. Appx. 431, 435 (6th Cir. 2012) (internal citation omitted).

Generally, a court should grant a motion for new trial "only when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Mitchell v. Boelcke*, 440 F.3d 300, 303 (6th Cir. 2006) (citing *Holmes v. Massillon, Ohio*, 78 F.3d 1041, 1045–46 (6th Cir. 1996)) (internal citations omitted). A trial court may compare and weigh the opposing evidence in deciding a motion for a new trial based on the contention that the verdict is against the weight of the evidence. *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). The Court may not, however, "set aside the verdict simply because it believes that another outcome is more justified. The court is to accept the jury's verdict if it is one which reasonably could have been reached." *Crouch v. W. Exp., Inc.*, No. 3:11-0903, 2014 WL 1094456, at *6 (M.D. Tenn. Mar. 19, 2014) (internal quotations and citations omitted). A motion for new trial is not an opportunity to re-argue the case. *Id*. "A verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Id*.

## B. Expert Testimony

The Supreme Court and the Sixth Circuit have observed that the admissibility of expert testimony is a flexible inquiry where "non-scientific expert testimony is involved" because the "law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007); *accord Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). A district court deciding whether an expert's opinion is reliable "is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *Stuckey v. Online Res. Corp.*, No. 2:08–CV–1188, 2012 WL 1808943, at *4 (S.D. Ohio May 17, 2012) (Marbley, J.) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008).

While expert testimony is permitted to embrace an "ultimate issue," an expert is not permitted to testify regarding "legal conclusions" since the testimony "may convey unexpressed, and perhaps erroneous, legal standards to the jury." *U.S. ex rel. Martin v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2014 WL 4816006, at *3 (E.D. Tenn. Sept. 29, 2014) (internal quotation marks omitted) (citing *Shahid v. City of Detroit*, 889 F.2d 1543, 1547 (6th Cir. 1989) and *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)). Furthermore, the Sixth Circuit has clarified that although expert opinion may embrace ultimate issues to be decided by the jury, the expert is not permitted to draw a legal conclusion and is only permitted to state an opinion "that suggests the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (noting that a court would not be permitted to "allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to

opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important.").

### III. LAW & ANALYSIS

Plaintiffs argue that the admission of impermissible testimony from Defendant's experts, Britta Moss and Edwin Hollern, coupled with the exclusion of the testimony of Plaintiffs' expert, Stuart Setcavage, constituted harmful, substantial error, so much so that they are entitled to a new trial. (*See* ECF No. 123). Defendant, meanwhile, maintains that a new trial is unwarranted as its experts rendered no impermissible legal opinions, and, regardless, any error on admissibility was harmless. (*See* ECF No. 131). This Court finds that Plaintiffs are **not** entitled to a new trial.

#### A. Ms. Moss's Testimony

Defendant's first expert, Britta Moss, testified on May 26, 2021. (*See* ECF No. 119). Plaintiffs argue that, during direct examination, Ms. Moss offered numerous impermissible legal conclusions which spoke to the ultimate issue of liability. (ECF No. 123 at 3). Plaintiffs maintain Ms. Moss offered impermissible legal conclusions as to: (1) interpretations of the cooperation clause and other elements of the Insurance Policy (the "Policy"); (2) the workers compensation lien; and (3) the probate requirement. (*Id*. at 3–6). Regarding the cooperation clause, Plaintiffs allege Ms. Moss impermissibly offered legal conclusions with respect to whether Plaintiffs, by and through their attorney Scott Blass, violated the clause. (*Id*. at 4). Concerning the workers compensation lien, Plaintiffs assert that Ms. Moss improperly concluded that Defendant "had complied with any responsibilities it had as to the lien and suggesting [] Plaintiffs had not[.]" (*Id*. at 5 (citing ECF No. 119 at 24)). Similarly, Plaintiffs argue that Ms. Moss's testimony wrongly instructed the jury as to who had the authority to negotiate the lien and who is responsible for obtaining probate approval. (*Id*. at 5–6). Plaintiffs twice objected to the aforementioned testimony,

and those objections were overruled. (*Id*. at 4, 6). Plaintiffs maintain that, throughout her testimony, Ms. Moss violated this Court's rulings that expert witnesses are not to testify regarding legal conclusions, as well as Federal Rule of Evidence 702 and case law addressing the inadmissibility of expert testimony on questions of law. (*Id*. at 18). This error, say Plaintiffs, was not corrected by this Court's jury instructions. (ECF No. 134 at 11).

Defendant argues that Ms. Moss did not render any impermissible legal opinions on: (1) the cooperation clause; (2) the workers compensation lien; or (3) the probate requirement. (*See* ECF No. 131). First, regarding the confrontation clause, Defendant maintains that Ms. Moss's testimony was based on her knowledge and experience in the insurance industry and her familiarity with industry standards. (*Id*. at 9). And, while she did criticize Mr. Blass's alleged failure to cooperate, she did so in the context of industry practices and standards. (*Id*. at 11). This, says Defendant, is permissible under Rule 702. (*Id*. at 11–12 (citing *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990))). Second, Defendant argues that Ms. Moss did not offer any improper legal opinion about the workers compensation lien—she simply referenced the statute. (*Id*. at 19). Defendant maintains that Ms. Moss "couched [her] opinions in terms of industry and professional standards and based [her] testimony on [her] experience [] handling liens." (*Id*. at 20). Third, Defendant asserts that Ms. Moss offered no improper legal opinion about probate. (*Id*. at 21). Defendant notes that Ms. Moss only referenced the probate statute, and Plaintiffs did not object to any of her probate testimony. (*Id*.). As a result, argues Defendant, there was no "'plain error' that affected Plaintiffs' 'substantial rights'" (*Id*. (quoting *United States v. Johnson*, 488 F.3d 690, 697 (6th Cir. 2007). These points aside, Defendant maintains that any alleged impermissible testimony from Ms. Moss was either ancillary to the ultimate issue or its admission constituted harmless error. (*Id*.).

A Court may not vacate a jury verdict based on the erroneous admission of evidence "unless the testimony's admission . . . amounted to more than harmless error." *Field v. Trigg Cnty. Hosp. Inc.*, 386 F.3d 729, 736 (6th Cir. 2004) (internal quotations omitted). It must be "more probable than not that the error materially affected the verdict." *Barnes v. City of Cincinnati*, 401 F.3d 729, 743 (6th Cir. 2005). Plaintiffs have not demonstrated that any of Ms. Moss's testimony "was erroneously admitted, nor have they demonstrated that any error in its admission amounted to more than harmless error." *Specialty Med. Prod., Inc. v. Hall*, No. 3:14-CV-1152, 2016 WL 8505591, at *20 (M.D. Tenn. Sept. 23, 2016).

As Rule 704(a) makes clear, otherwise admissible opinion testimony is not objectionable simply because "it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a); *see also United States v. Brawner*, 173 F.3d 966, 969–70 (6th Cir. 1999) (permitting testimony of expert on the practices of fraudulent telemarketing operations, despite the fact that the opinion "concern[ed] an ultimate issue in the case," where the expert opined that the defendant's operations "were consistent with those generally followed by fraudulent telemarketing organizations"). Only where such testimony offers nothing more than a legal conclusion, is it properly excluded. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). Ms. Moss's testimony on the cooperation clause and on Mr. Blass's responsibilities did not constitute "purely legal conclusion[,]" and therefore was properly admitted under Rule 704(a). (*See* ECF No. 119 at 57). Moreover, in bad faith insurance cases such as this, an expert may testify that certain conduct "was inconsistent with or failed to comport with industry standards[,]" which is ancillary to the ultimate legal conclusion of whether Defendant actually acted in bad faith. *Arrowood Indem. Co. The Lubrizol Corp. v. United States Fire Ins. Co.*, No. 1:10 CV 2871, 2016 WL 6610806, at *2 (N.D.

Ohio Feb. 21, 2016) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016–17 (9th Cir. 2004)).

Similarly, Ms. Moss's testimony regarding the workers compensation lien and probate statutes constituted permissible opinion testimony under Rule 704(a). First, while Ms. Moss mentioned both the workers compensation lien and probate statutes,[1] she did not read from either. (*See* ECF No. 119 at 24, 27). Rather, Ms. Moss testified as to standard industry practices and her experience handling both workers compensation liens and obtaining probate approval. (*Id*. at 24–27). She then offered her professional opinion as to whether certain actors comported with those standards. (*Id*.). Ms. Moss's experience in the insurance industry, as developed on the record, qualifies her to render such an opinion. *See Reliable Transportation Specialists, Inc. v. Wausau Underwriters Ins. Co.*, No. 15-12954, 2019 WL 1559462, at *5 (E.D. Mich. Apr. 10, 2019). Moreover, such testimony was "helpful to the jury." *Id*. (admitting testimony in a bad faith insurance case "regarding an insurer's duties under an insurance policy and the bad faith standard under Michigan law, and ultimately whether [defendant's] conduct satisfie[d] the standard of bad faith under Michigan law").

Even if this Court should have limited the admission of, or even excluded, some of Ms. Moss's testimony, "the admission of such evidence was nothing more than harmless error, which would not warrant a new trial." *Specialty Med. Prod., Inc.*, 2016 WL 8505591 at *20. To begin, this Court does not find that it is "more probable than not" that Ms. Moss's testimony "materially affected" the jury's verdict. *Barnes*, 401 F.3d at 743. As Defendant points out, Plaintiffs had ample

---

[1] Notably, at trial Plaintiffs did not object to Ms. Moss's testimony regarding probate procedures. (*See* ECF No. 119; *see also Weaver v. Ford Motor Co.*, 382 F. Supp. 1068 (E.D. Pa. 1974), *aff'd*, 515 F.2d 506 (3d Cir. 1975), and *aff'd*, 515 F.2d 507 (3d Cir. 1975) ("Specific objection to a ruling of trial judge is a condition precedent to a motion for new trial based on error in connection with such ruling.")).

opportunity to cross examine Ms. Moss and inquire into her qualifications, industry experience and the basis for her professional opinions. Furthermore, the jury instructions reduced the risk that the jury premised its verdict solely on this testimony. (*See* ECF No. 129 at 47 ("After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.")). Plaintiffs' concern regarding whether Mr. Blass could have violated the cooperation clause similarly was ameliorated with a very specific instruction to the jury. (*See id*. at 55 ("Because Plaintiffs' initial attorney, Mr. Scott Blass, was not in privity of contract with Defendant Erie Insurance Company, he could not himself have violated the cooperation clause.")). While Plaintiffs may feel these instructions were ineffective, there is a general presumption that properly instructed juries are "capable of considering evidence for one purpose but not another." *Washington v. Hofbauer*, 228 F.3d 689, 705 (6th Cir. 2000). "This presumption applies 'unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant.'" *Kendel v. Loc. 17-A United Food & Com. Workers*, 512 F. App'x 472, 481 (6th Cir. 2013) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987)). This Court sees no "overwhelming probability that the jury would be unable to follow [its] instructions in this case." *Id*.

Accordingly, pursuant to the foregoing analysis, this Court finds that none of Ms. Moss's testimony was erroneously admitted and any error in its admission did not amount to more than harmless error.

### B. Mr. Hollern's Testimony

Attorney Edwin Hollern, Defendant's second expert witness, testified on May 28, 2021. (*See* ECF No. 119). Plaintiffs allege Mr. Hollern impermissibly offered various opinions on

standards applicable to the insurance industry, "including ones that unequivocally spoke to the ultimate issues of liability . . . ." (ECF No. 123 at 7). Plaintiffs maintain that Mr. Hollern offered impermissible legal conclusions as to: (1) interpretations of the cooperation clause and other elements of the Policy; (2) the workers compensation lien; and (3) the probate requirement. (*Id*. at 7–10). This testimony, say Plaintiffs, was neither harmless error nor "ancillary to the ultimate issue." (ECF No. 134 at 9). As to workers compensation and probate law, Plaintiffs allege Mr. Hollern impermissibly testified as to who holds specific responsibilities when handling a workers compensation lien and provided interpretations of the Policy in support of his conclusion that Defendant had no duty to pay the Plaintiffs' claim before probate approval had been obtained. (ECF No. 123 at 7–9). Plaintiffs maintain that, although portions of Mr. Hollern's testimony were stricken by this Court, he nonetheless repeatedly provided "both statutory and policy interpretations leading to opinions and conclusions that [Defendant] had complied with legal obligations, while Plaintiffs had not." (*Id*. at 7). Plaintiffs assert that Mr. Hollern's did more than simply reference these statutes; he directly stated what the parties' responsibilities were under each statute. (*Id*. at 11–13). It is Plaintiffs' position that Mr. Hollern repeatedly intruded on this Court's duty to instruct the jury on the law, so much so that it substantially and adversely affected their rights. (*Id*.).

Defendant argues that Mr. Hollern properly rebutted testimony from Plaintiffs' witnesses and rendered no impermissible legal opinions. (*See* ECF No. 131). It maintains that Mr. Hollern did not render any impermissible legal opinions on the rights and duties of the parties with respect to: (1) the cooperation clause; (2) the workers compensation lien; or (3) the probate requirement. (*Id*. at 8). First, regarding the cooperation clause, Defendant argues that Mr. Hollern testified as to the professional standards for when attorneys, like Mr. Blass, are working with an insurance

9

adjuster to resolve a UM death claim. (*Id*.). Mr. Hollern then offered his professional opinion as to whether those standards were adhered to here, testimony which Defendant asserts constituted permissible opinion testimony under Rule 704(a). (*Id*. at 11). Second, Defendant argues that Mr. Hollern's testimony on the workers compensation lien was similarly permissible opinion testimony. (*Id*. at 19). As with Ms. Moss's testimony, Defendant emphasizes that Mr. Hollern only referenced the workers compensation statute, rather than reading the statute verbatim. (*Id*.). In fact, Defendant notes that just as Mr. Hollern was attempting to paraphrase the statute, Plaintiffs objected, and this Court struck that testimony. (*Id*.). Third, Defendant asserts that Mr. Hollern testified about the general reasons for probating a settlement and how the process works; he did not render any impermissible legal opinions. (*Id*. at 21). Defendant argues that Mr. Hollern merely referenced the probate statute without reading from, or paraphrasing, it and that the remainder of Mr. Hollern's testimony on this issue relied on his industry knowledge, the applicable professional standards, and whether that actor complied with those standards. (*Id*. at 22). These points aside, Defendant maintains that any alleged impermissible testimony from Mr. Hollern was either ancillary to the ultimate issue or its admission constituted harmless error. (*Id*.).

Plaintiffs have not demonstrated that any of Mr. Hollern's testimony "was erroneously admitted, nor have they demonstrated that any error in its admission amounted to more than harmless error." *Specialty Med. Prod., Inc.*, 2016 WL 8505591 at *20. This Court's previous findings, regarding the testimony of Ms. Moss, prove determinative here. (*See supra* at Part III(A)).

First, Mr. Hollern's testimony on the cooperation clause and Mr. Blass's responsibilities thereto, was permissible. "An expert's testimony that an insurance company deviated from industry standards is permissible, as long as the expert does not reach a conclusion that the insurance company actually acted in bad faith." *Arrowood Indem. Co.*, 2016 WL 6610806, at * 2

10

(citing *Hangarter*, 373 F.3d at 1016–17). Plaintiffs highlight the following exchange where Mr. Hollern reached a conclusion that Mr. Blass actually acted in bad faith:

> Q. Based upon your education, training and experience, and based upon all the information you've reviewed in this case, do you have an opinion to a reasonable degree of certainty as to whether Attorney Blass's handling of this claim were consistent with a bad faith setup?
>
> A. I do have an opinion.
>
> Q. What's your opinion?
>
> A. My opinion is I do think it's consistent with a bad faith setup.

(ECF No. 120 at 33–34). This testimony, however, is not what Plaintiffs claim it is. Mr. Hollern is opining on whether Mr. Blass acted in bad faith, in violation of the cooperation clause, not whether Plaintiffs themselves acted in bad faith. This Court ultimately determined that because Mr. Blass was not in privity of contract with Defendant, he could not himself have violated the cooperation clause. This Court instructed the jury accordingly. (*See* ECF No. 129 at 55). As a result, Mr. Hollern's testimony on the actions of Mr. Blass is, at most, ancillary to the issue of whether Plaintiffs themselves acted in bad faith. *See Hangarter*, 373 F.3d at 1016–17 (affirming decision to permit expert testimony that defendants departed from insurance industry norms, which was "ancillary to the ultimate issue of bad faith").

Second, Mr. Hollern's testimony on the workers compensation lien statute and probate procedures constituted permissible opinion testimony under Rule 704(a). As with Ms. Moss's testimony, the mere mention of a statute does not constitute instructing the jury on the law. Similarly, this testimony did not amount to Mr. Hollern interpreting the Policy or the legal implications of its provision. As this Court noted at sidebar, "insurance is really a business that is terribly intertwined with the law because it involves the insurance contract. So, anyone who is an

expert in insurance contract though not a lawyer is . . . involved with, to a certain extent, making certain types of hybrid conclusions that might be part purely insurance but part [] contract analysis." (*See* ECF No. 119 at 56–57; *see also The Way Int'l v. Exec. Risk Indem., Inc.*, No. 3:07CV294, 2009 WL 3157402 (S.D. Ohio Jan. 27, 2009) (recognizing that "expert testimony may be admitted where it will assist in understanding complex matters"). And, as with Ms. Moss, Mr. Hollern's experience in the insurance industry, as developed on the record, qualifies him to render such an opinion. *Reliable Transportation Specialists, Inc.*, 2019 WL 1559462, at *5.

Even if some of Mr. Hollern's testimony should not have been admitted, the admission "was nothing more than harmless error, which would not warrant a new trial." *Specialty Med. Prod., Inc.*, 2016 WL 8505591 at *20. First, as detailed above, this Court appropriately instructed the jury on how to weigh evidence and on Mr. Blass's relation to the cooperation clause. (*See* ECF No. 129 at 47, 55). Plaintiffs had the opportunity to question Mr. Hollern's qualifications, industry experience and the basis for his professional opinions, during cross examination. Ultimately, this Court does not find that it is "more probable than not" that Mr. Hollern's testimony "materially affected" the jury's verdict. *Barnes*, 401 F.3d at 743.

Accordingly, pursuant to the foregoing analysis, this Court finds that none of Mr. Hollern's testimony was erroneously admitted and any error in its admission did not amount to more than harmless error.

### C. This Court's Rulings on the Admissibility of Mr. Setcavage's Testimony

In ruling on Defendant's Motion for Summary Judgment as well as the parties' Motions in Limine, this Court held that portions of Mr. Setcavage's expert report "offer[ed] legal conclusions and ma[de] conclusory statements that [were] unsupported with specific examples of how his experience or knowledge of industry standards applies to the facts of this case." (*See* ECF No. 81

12

at 11). Accordingly, this Court excluded those portions of Mr. Setcavage's report and forbade him from offering any such testimony at trial. (*Id*. at 11–12).

Plaintiffs argue that these rulings prejudicially limited the scope of their case and precluded them from presenting testimony to rebut or refute Defendant's presentation of inadmissible evidence. (ECF No. 123 at 2). While Defendant offered significant testimony that constituted legal opinions, Plaintiffs maintain that neither Mr. Blass nor Mr. Setcavage offered any such testimony. (ECF No. 134 at 2–4). Mr. Blass, say Plaintiffs, merely "explained his background, education, and years of experience in representing clients in uninsured motorist claims, before answering questions about why he did what he did while representing the Plaintiffs[;]" this does not constitute a legal opinion. (*Id*. at 3). Plaintiffs argue that Mr. Setcavage testified only about his experience and knowledge based on his involvement in litigation matters while he was an employee of an insurance company. (*Id*. at 4). Moreover, Plaintiffs argue that given this Court's previous rulings on Mr. Setcavage's testimony "[t]he door had already closed on [their] ability to have introduced the same evidence as part of their case in chief." (*Id*. at 8). This, say Plaintiffs, "constitutes more than harmless error," and "created a situation where jurors were permitted to hear legal conclusions and instructions on the law from [only Defendant's] experts witnesses." (ECF No. 123 at 2).

Defendant, meanwhile, argues that the testimony of Mr. Moss and Mr. Hollern were by no means "unrebutted," as both Plaintiffs' expert, Mr. Setcavage, and Mr. Blass, each rendered legal opinions in Plaintiffs' case in chief. (ECF No. 131 at 3–8). Beginning with Mr. Blass, Defendant maintains that, although he was not identified as an expert, he offered numerous legal opinions which spoke to the ultimate issue in the case. (*Id*. at 3–6). Specifically, Defendant asserts that Mr. Blass referenced the workers compensation lien statute and testified that Defendant wrongfully withheld payment. (*Id*. at 4). Defendant highlights numerous moments in Mr. Blass's testimony

13

where he discussed Defendant's obligations under both the workers compensation and probate statutes. (*Id*. at 5). Given that Mr. Blass is an attorney, Defendant argues that this testimony was particularly influential and damaging. (*Id*. at 6). Additionally, Defendant argues that, despite this Court's rulings, Mr. Setcavage too, repeatedly "crossed the line between proper opinion testimony and improper legal conclusions." (*Id*. at 7). Defendant points to testimony from Mr. Setcavage wherein he defines the "bad faith" standard as well as rendered legal opinions about probate, the Policy, and the worker compensation lien. (*Id*. at 7–8 (citing ECF No. 121)). Because Mr. Blass and Setcavage offered this impermissible testimony, Defendant further argues that Plaintiffs opened the door to rebuttal testimony from Defendant's experts. (*Id*. at 13–14, 20, 22). Defendant maintains that given the testimony of Mr. Blass and Mr. Setcavage, it was entitled to offer rebuttal testimony from its experts as to the parties' rights and obligations under both the Policy and the respective statutory and professional standards. (*Id*.).

As detailed above, this Court has already found that neither Ms. Moss nor Mr. Hollern offered impermissible testimony, and to the extent they did, the admission of such testimony was harmless error. (*See supra* at Part III(A–B)). Accordingly, the only remaining basis for Plaintiffs' request for a new trial is that the admission of Ms. Moss's and Mr. Hollern's testimony, coupled with this Court's ruling on Mr. Setcavage's testimony, created such an evidentiary imbalance that Plaintiff's substantive rights were violated.

A "[r]eversal based on improper admission of evidence is appropriate only when the admission interfere[s] with substantial justice." *See Slayton v. Ohio Dept. of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000). Similarly, an erroneous evidentiary ruling only justifies a new trial where the ruling affected the outcome of the trial. *See Cummins v. BIC USA, Inc.*, 727 F.3d 506, 509 (6th Cir. 2013); *see also Umfress v. City of Memphis*, No. 217CV02568SHLTMP, 2020 WL 12975461,

14

at *2 (W.D. Tenn. Aug. 26, 2020), *aff'd sub nom*. *Umfress v. City of Memphis*, *Tennessee*, No. 20-6115, 2021 WL 2828023 (6th Cir. July 7, 2021) (holding that where there is no evidence that "a reasonable juror could reach the challenged verdict," a new trial is improper). Plaintiffs have offered no evidence that this Court's ruling on the admissibility of Mr. Setcavage's testimony affected the outcome of the trial. This Court's determination that *some* of Mr. Setcavage's expert report contained inadmissible legal conclusions was certainly not a "clear error of judgment[.]" *In re Scrap Metal*, 527 F.3d at 528. In any event, Plaintiffs were still able to put this information before the jury. The trial transcript reveals that both Mr. Setcavage and Mr. Blass, just like Ms. Moss and Mr. Hollern, testified at length about the parties' duties under the Policy, the various statutes and professional standards at play, as well as their professional opinion on whether specific parties complied with those statutes and standards. (*See generally* ECF Nos. 121, 126). This testimony, like the testimony of Ms. Moss and Mr. Hollern, constituted permissible opinion testimony pursuant to Rule 704(a). To the extent the testimony of any of these four witnesses veered into impermissible legal opinions, this Court struck it from the record. (*See* ECF No. 120 at 17 (striking Mr. Hollern's testimony wherein he attempted to testify to the exact wording of a statute)). This Court does not find that its exclusion of parts of Mr. Setcavage's expert report was so prejudicial to Plaintiffs that they are entitled to the extreme remedy of a new trial.

\* \* \* \*

One final note on the cumulative error doctrine. "Errors that do not alone require reversal may cumulatively merit reversal for a new trial under Fed. R. Civ. P. 59." *Kendel*, 512 F. App'x at 485; *see e.g.*, *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 251 (6th Cir. 2011). While Plaintiffs do not make a specific claim of cumulative error here, they do make several arguments as to why a new trial is necessary, which taken together would support their request for

15

a new trial. As detailed above, however, most of the purported errors identified by Plaintiffs did not constitute error in the first instance, and the relatively minor errors that may have occurred were harmless, even when considered cumulatively. Ultimately, "[w]hile the trial in this case 'may not have been perfect, . . . it was fair.'" *Michigan First Credit Union*, 641 F.3d at 251 (quoting *United States v. Ashworth*, 836 F.2d 260, 268 (6th Cir. 1988)).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a New Trial (ECF No. 122) is **DENIED**. This case shall remain closed.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 6, 2022**